UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSHUA H., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.  4:23 CV 958 JMB |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On May 15, 2020, Plaintiff Joshua H. filed an application for disability benefits only, alleging that his disability began on March 29, 2020 (Tr. 158-160) because of systolic heart failure, diabetes, and arthritis (Tr. 204).  His alleged onset date was amended to September 1, 2020 (Tr. 173).  His claim was denied initially (Tr. 59) and upon reconsideration (Tr. 66-73).  Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (Tr. 101-102) and he appeared at the hearing (with counsel) on August 9, 2022 and testified concerning the nature of his disability, his functional limitations, and his past work (Tr. 30-58).  The ALJ also heard testimony from Bassey Duke, a vocational expert ("VE") (Tr. 30).  After considering Plaintiff's testimony and the VE's testimony, and after reviewing the other relevant evidence of record, the ALJ issued a decision on October 26, 2022, finding that Plaintiff was not disabled, and therefore denying

benefits (Tr. 11-29).  Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration; that appeal was denied (Tr. 1-6).  Accordingly, the October 26, 2022 decision of the ALJ is the final decision of the Commissioner.  Plaintiff has therefore exhausted administrative remedies, and this appeal is properly before the Court.  See 42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

### A.      Disability and Function Reports and Hearing Testimony

Plaintiff filled out two Function Reports that appear to be identical but that are not carbon copies (Tr. 213-221 and Tr. 222-231).  He states that he is unable to stand or sit for extended periods of time, that his hands go numb, that he is unable to walk long distances and that he requires frequent bathroom breaks (Tr. 213).  He states that he sits and lays down all day, that he does not care for others, that he does not care for animals, that no one helps him care for others or animals (Tr. 214).  He is able to self-care, does some laundry, and manages finances; but, his wife and daughter prepare meals, shop,  and "everything" (Tr. 215-216).  He gets outside every couple of days, but it hurts to walk and he normally travels as a passenger in a car.   He no longer is able to hike, fish, or camp (Tr. 217).

As to particular functional limitations, Plaintiff indicates that he has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using hands (Tr. 218).  He states that he can only walk 5 to 8 feet before resting for 15 to 30 minutes.

At a hearing on August 9, 2022, Plaintiff testified that he is 43 years old, 6 foot 2 inches tall and weighs approximately 440 pounds (Tr. 36-37).  He lives with his wife and daughter and has an associate degree in information technology (Tr. 37).  His last employment, which lasted 3 years until around September 1, 2020, was at Casey's Marketing Company where he became an

assistant manager (Tr. 37-38). Plaintiff believes that he cannot work full time because a water pill (a diuretic, Bumetanide) makes him urinate frequently, he has bowel accidents because of diverticulitis, he gets winded from walking short distances, and he has hip and back pain from sciatica (Tr. 40-41, 43). During a regular day, he takes care of at least 3 dogs (there are 2 dogs at his other house), watches T.V., does a little bit of cleaning, and occasionally cooks dinner (Tr. 42). He testified that he needs to urinate 4 to 5 times an hour (Tr. 43), that he has to lay down and sees "white spots" because of pain in his lower back and right hip (Tr. 44), and he changes positions as frequently as 1 to 4 times an hour (Tr. 47-48). He also testified that he does not take any pain medication except for CBD, which he buys over the counter (Tr. 45). Finally, Plaintiff testified that he does not have health insurance and that he cannot afford to see a doctor, other than his heart doctor who he only sees once a year because he has to refill his prescription medications (Tr. 46-47).

The VE testified that Plaintiff's past work as an assistant manager, cashier, customer service representative, and quality assurance specialist ranged from light to very heavy work (as performed) and from semi-skilled to skilled (Tr. 50-51). The VE was asked to determine whether someone of Plaintiff's age, and with his education, work experience, and specific functional limitations, would be able to perform his past work (Tr. 52-53). These functional limitations for the sedentary exertional level include: Occasionally push or pull or operate foot controls with both lower extremities; occasionally stoop, kneel, crouch, balance and crawl; occasionally climb stairs and ramps; never claim ladders, ropes, or scaffolds; never be exposed to unprotected heights or moving mechanical parts; occasionally be exposed to concentrated atmospheric conditions; occasionally tolerate vibration; understand, carry out, and remember simple instructions; and, use judgment to make simple work-related decisions. The VE testified that such a hypothetical person

would not be able to do Plaintiff's past relevant work (Tr. 51-52). However, the VE testified that there were other jobs in the national or regional economy that such a person could perform including document preparer, document addresser, and call-out operator (Tr. 53).

The ALJ next asked the VE to testify about the work opportunities for a person with the same limitations as above but who would be off task 10% of the day. The VE testified that the same jobs would be available (Tr. 54).

The ALJ next added to the hypothetical – that a person must lie down for 20 minute every hour and be off task for 20% of the work day (Tr. 54). The VE testified that no jobs would be available with those added conditions (Tr. 54).

In clarifying, the VE testified that the 10% off task tolerance included one brief morning break, a lunchtime break, and one brief afternoon break; and that no other breaks in a workday would be tolerated (Tr. 55-56).

### B. Medical and Opinion Evidence

As indicated above, Plaintiff's alleged onset date is September 1, 2020. The medical records span from May 25, 2019 to September 27, 2022.

On May 25, 2019, Plaintiff presented at the emergency room with a chief complaint of lower right back pain radiating down his leg (Tr. 491). At the time, Plaintiff reported that he controlled his diabetes with diet and that he was not taking medication for high blood pressure (Tr. 491). He was obese (over 400 pounds), but had no respiratory distress or lower extremity edema; however, he had tenderness in the lower lumbar area, muscle spasms, and a limited range of motion (Tr. 492). He was discharged in good and stable condition, directed to rest for three days before going back to work, limit lifting, bending, and stooping, and prescribed pain medication (hydrocodone) and Robaxin for muscle spasms (Tr. 493). He presented in an emergency room a

few weeks later, on June 10, 2019 with similar complaints (Tr. 579). And, again on December 2, 2019 (he indicated that he had fallen and was off work since 11/29 due to his condition) (Tr. 573). He was given medication or told to continue medication (Toradol and Norflex), to take NSAIDs and muscle relaxants as needed for pain, and to follow up with his primary care physician (Tr. 578). He was further told to "[a]void inactivity" but to not engage in strenuous activity (Tr. 578).

After visiting the emergency room (Tr. 429) on March 29, 2020, he was treated by Dr. Mullen for shortness of breath (Tr. 422) and diagnosed with unspecified heart failure (Tr. 427). He was admitted to the hospital and discharged on April 7, 2020 in "fair and stable" condition (Tr. 428). He followed up on April 16, 2020 with Dr. Andrew Ninichuck (Tr. 347) and appeared normal on visual examination (Tr. 349). He was directed to follow up with Dr. Osler J. Guzon. (Tr. 349). At a subsequent follow up on May 18, 2020, his conditions (CHF, mediastinal lymphadenopathy,[1] obstructive sleep apnea, diabetes with hyperglycemia) are listed as "stable" and a visual physical exam is described as normal (Tr. 353-354).

Dr. Guzon treated Plaintiff on April 6, 2020, (Tr. 382) and May 27, 2020 (Tr. 385). He underwent a variety of testing including an echocardiogram on March 30, 2020 (Tr. 397), a perfusion stress test on May 27, 2020 (Tr. 399), a coronary angiography (Tr. 404-5). He was examined by Dr. Guzon on March 31, 2021, April 28, 2021 and April 6, 2022 and his medications were refilled (Tr. 594, 598).

He saw Dr. Mullen again for chest pain on December 14, 2020 (Tr. 409). He had shortness of breath and edema in his lower extremities but otherwise was not in distress or ill appearing (Tr. 410-411). However, it appears that he refused treatment because he did not want to be tested for COVID-19 (Tr. 413). He was diagnosed with "non-traumatic chest pain" (Tr. 413).

---

[1] Plaintiff was referred to Dr. David Lee Ulrich for this condition and seen on May 29, 2020 – he was found to be ambulating, with no shortness of breath and his physical examination was normal (Tr. 358, 361).

In June 2021, he presented at the emergency department with dysuria, hematuria, and right flank pain (Tr. 449). He was diagnosed with a urinary tract infection and kidney stones and directed to follow up with a urologist (Tr. 453, 457). That same month, Plaintiff was in a car accident and injured his right shoulder, hip, and left rib cage (Tr. 563). On July 13, 2021, he presented with elevated blood pressure and shortness of breath (Tr. 549). He reported going camping the week prior and failing to take his medication regularly (Tr. 549).

Additional medical records will be discussed as necessary.

Two agency doctors, Dr. Judee Bland and Dr. Donald Nelson, and a consultant, Nurse Rachel Dibooglu, provided expert opinions on the effect of Plaintiff's medical conditions on his functional capacity. Drs. Bland and Nelson offered similar opinions in May and October, 2021, respectively. They each found that Plaintiff could sit for 6 hours and stand/walk with normal breaks for 2 hours in an 8-hour workday (Tr. 62, 69).

Nurse Dibooglu examined Plaintiff on September 27, 2022 at the request of the ALJ (Tr. 627-641). In a narrative of the examination, Nurse Dibooglu noted that Plaintiff's main complaints are systolic heart failure, diabetes, and arthritis and that suffers from generalized weakness and pain, vertigo, shortness of breath, swelling, diarrhea, constipation, abdominal pain, and coughing fits that are exacerbated by overexertion and that limit his activities (Tr. 637). Upon examination, Plaintiff could walk without an assistive device but uses a cane for stability and prolonged activity; he had slow even strides with gait waddling (Tr. 639). He appeared steady while standing and could rise and sit without assistance but had lower extremity edema (Tr. 639). He had "[n]o shortness of breath with rest, conversation, lying flat, or mild exertion" (Tr. 639). His upper extremity range of motion was normal, with normal strength, normal grip strength, and "fully intact" fine and gross finger movements (Tr. 640). He had some abnormalities in his lower

extremities described as "mildly weak" knee flexion and extension, hip tenderness, stiffness, and pain, "fair" range of motion but painful and stiff in the hips, and bursa tenderness (Tr. 640). He also had burning type pain in his right foot and lower leg (Tr. 640). He had mild tenderness in his neck/cervical spine with a mildly decreased range of motion with crepitus, stiffness, and pain (Tr. 640). He also had mild tenderness in his lumbosacral spine along with stiffness and pain (Tr. 640).

Based on these findings, Nurse Dibooglu found that Plaintiff could sit for 2 hours at a time, stand for 10 minutes and walk for 10 minutes at one time; and that in an 8-hour work day, he could sit for 4 hours, stand for 1 hour, and walk for 2 hours (i.e., 7 hours total) – she did not indicate what he would/could do for the remaining hour (Tr. 630). She found he could frequently lift and carry 10 pounds but only occasionally lift 11-50 pounds (and carry up to 20 pounds) but never lift or carry more than that (Tr. 629). She further indicated that he needed a cane to walk but that it was not medically necessary and he could walk 200 feet without one (Tr. 630). She also found limitations on use of his hands and limitations on the use of his feet (Tr. 631). She found he could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl and that he can occasionally climb stairs or ramps and balance (Tr. 632). She further noted that he could occasionally tolerate moving mechanical parts, operating a motor vehicle, humidity and wetness, dusts, fumes, and pulmonary irritants, extreme cold and heat, and vibrations; but never unprotected heights.

### III. Standard of Review and Legal Framework

To be eligible for disability benefits, plaintiff must prove that she is disabled under the Act. See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the

national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Ross v. O'Malley, 92 F.4th 775, 778 (8th Cir. 2024). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." Id. Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d

549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

### IV.  The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above (Tr. 14 - 25). The ALJ found that Plaintiff met the insured status requirements through December 31, 2025 and had not engaged in substantial gainful activity since September 1, 2020 (Tr. 17). At step two, the ALJ found that plaintiff had the severe impairments of mediastinal lymphadenopathy; obesity; NSTEMI; mitral valve regurgitation; sciatica; lumbar spine radiculopathy; degenerative disc disease of the cervical spine; and, right hip osteoarthritis (Tr. 17). The ALJ determined at step three that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment (Tr. 18). The ALJ specifically addressed listings 1.15, 1.18, and 4.02 (Tr. 18).

The ALJ next determined that Plaintiff had the RFC to perform sedentary work with limitations. These include: occasionally push and pull or operate foot controls with both lower extremities; occasionally kneel, crouch, stoop, balance and crawl; occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; never be exposed to unprotected heights or moving mechanical parts; occasional concentrated exposure to atmospheric conditions; occasional exposure to vibration; ability to understand, carry-out, and remember simple instructions; and use judgment to make simple work-related decisions. In addition, he would be off-task for 10 % of the work day (Tr. 19). In assessing Plaintiff's RFC, the ALJ summarized the medical record;

written reports from Plaintiff; Plaintiff's work history; and, Plaintiff's testimony regarding his abilities, conditions, and activities of daily living (Tr. 19-).

At step four, the ALJ concluded that Plaintiff was unable to return to his past relevant work (Tr. 20).  The ALJ further found that, at 41 years old on the relevant date, he is a younger individual with at least a high school education.  At step five, the ALJ found that Plaintiff could perform other work in the national economy including document preparer, document addressor, and call out operator (Tr. 24).  Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from September 1, 2020 to October 31, 2022, the date of his opinion (Tr. 25).

## V.    Discussion

In her brief, Plaintiff argues that the RFC is not supported by substantial evidence (Doc. 20).  In particular, Plaintiff argues that he does not retain the RFC to sit, stand, or walk for eight (8) hours of the day, that he can sit for less than six (6) hours a day, and that he can carry no weight. Plaintiff argues that Dr. Bland's and Dr. Nelson's opinions are insufficient to support the RFC found and that, instead, the ALJ should have given greater weight to Nurse Dibooglu's evaluation of Plaintiff's postural, exertional, and work hour limitations.  Plaintiff further argues that the ALJ failed to consider Plaintiff's need to urinate frequently.

When evaluating opinion evidence, the ALJ is no longer required to give controlling weight or any weight to opinion evidence.  20 C.F.R. 404.1520(a).  Instead, the ALJ is to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors. 20 C.F.R. § 404.1520c(b)(2).  Of these factors, an ALJ must explain how he considered the factors of supportability and consistency in his decision but need not explain how he considered the other

factors. 20 C.F.R. § 404.1520c(b)(2).[2] The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In articulating how she considers the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician did not consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion. Starman v. Kijakazi, 2021 WL 4459720, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases). The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In considering opinion evidence, an ALJ can be justified in rejecting an opinion if it contains no explanation of limitations despite containing areas where the doctor could explain the limitations found. See Nolen v. Kijakazi, 61 F.4th 575, 577 (8th Cir. 2023) (finding that the ALJ appropriately gave a treating doctor's opinion little weight where the doctor "checked some boxes and left blank the short-answer section asking what objective medical findings supported his assessment"); Swarthout v. Kijakazi, 35 F.4th 608, 611 (8th Cir. 2022) (finding physician's opinion "entitled to relatively little evidentiary value on its face, because it was rendered on a check-box and fill-in-the-blank form"). Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018) (finding that a treating physician's opinion, made in conclusory

---

[2] The other factors include the relationship with the claimant, specialization, and other factors which can include whether additional evidence was submitted after the date of the opinion. 20 C.F.R. § 404.1520c(c)(3-5). An ALJ is not required to address all of the factors in her opinion.

Page **12** of **16**

fashion and which "cite[s] no medical evidence and provide[s] little to no elaboration" can be rejected on that basis alone).

In making his arguments that the ALJ should have given controlling weight to Nurse Dibooglu's findings, Plaintiff relies on <u>Beardsley v. Colvin</u>, 758 F.3d 834 (7th Cir. 2014). That case may be persuasive authority for the proposition that the Court should examine closely an ALJ's rejection of the opinion of an examining medical professional retained by the agency; however, the <u>Beardsley</u> Court relied on 20 C.F.R. § 404.1527 which has now been replaced by the standard outlined above.

The ALJ indicated that he considered all the medical opinion evidence in accordance with § 404.1520(c) (Tr. 19). As such, he indicated that the restrictive elements of Nurse Dibooglu's opinion were not supported by the record or consistent with other treatment providers or her examination findings. The ALJ stated:

> The undersigned finds this opinion to be somewhat persuasive. Although somewhat supported by her physical examination findings, showing a slow and "waddling" gait, low back and hip tenderness, and limited range of motion, these findings were described as largely "mild" in degree (14F/14). For example, palpation of the neck revealed only "mild tenderness" and "mildly decreased" range of motion (14F/14). She also noted the claimant was able to walk safely without an assistive device (14F/15). Her neurological evaluation of the claimant noted "no evidence of atrophy" and "normal tone" (Id.). She also noted normal grip strength and intact fine and gross motor movement bilaterally (14F/14). Although the overall record is consistent with substantial deficits in residual functioning, it is inconsistent with the degree of limitation assessed by Ms. Diboglu. For example, a July 2021 physical examination was unremarkable, showing normal range of motion throughout and normal breath sounds (7F/12).

(Tr. 22). Prior to discussing Nurse Dibooglu's opinion, the ALJ also noted other medical evidence that both supported Plaintiff's claims and detracted from his claims. In considering both Plaintiff's heart condition and the degenerative changes in Plaintiff's spine, the ALJ limited Plaintiff to

sedentary work with a number of postural and exertional limitations that would accommodate his medical conditions which are exacerbated by his obesity (Tr. 20-21).

Plaintiff states that the ALJ did not address Nurse Dibooglu's finding that Plaintiff could work no more than 7 hours a day; however, the ALJ specifically indicated that the nurse "opined the claimant is limited to less than sedentary work . . . ." (Tr. 22). Less then sedentary work essentially means the Plaintiff cannot engage in substantial gainful activity. As such, the ALJ did consider this finding. Plaintiff next argues that the Court should scrutinize the ALJ's rejection of the nurse's opinion; but the regulations only require the ALJ to consider the opinion according to the factors and the ALJ did address both the supportability and consistency factors. In light of the current regulations that do not give preferential treatment to any opinion, it far from clear whether special scrutiny should be given when the agency does not find its own expert opinion's controlling.

Perhaps Plaintiff's most forceful argument is that the ALJ improperly concluded that Nurse Dibooglu's only found "mild" impairments. Certainly, Nurse Dibooglu did characterize some of her findings as mild (See e.g., Tr. 641: "ROM was mildly decreased"). In this case, however, the ALJ did not translate these "mild" findings into a conclusion that Plaintiff could perform all manner of work. Rather the ALJ accepted a great deal of Nurse Dibooglu's conclusions by noting throughout his opinion that Plaintiff had "substantial" deficits in functioning. He just did not find that these deficits were to the degree advocated by Nurse Dibooglu. For example, the ALJ indicated that because he found evidence of "limited an painful range of motion," Plaintiff was limited in climbing and postural maneuvers, in addition to limits on exposure to vibrations, unprotected heights, and moving machinery (Tr. 21). Coupled with the ALJ's finding that Nurse Dibooglu's findings were not supported by her own examination – her range of motion findings

and hand grip/strength/motor findings were not supported by her own testing – and inconsistent with other medical records -- including a 2021 physical examination showing normal range of motion and breath sounds -- the ALJ's discounting of Nurse Dibooglu's opinion was well within the range of choice available to an ALJ.  Austin v. Kijakazi, 52 F.4th 723, 729 (8th Cir. 2022).

Finally, Plaintiff briefly argues that the ALJ did not consider his incontinence in fashioning an RFC.  The ALJ did not list any incontinence conditions in describing Plaintiff's severe or non-severe conditions; however, he did note he considered all of Plaintiff's medically determinable conditions (Tr. 19).  Plaintiff does not elaborate on whether his frequent need to urinate is a medical condition that should have been considered by the ALJ.   See 20 C.F.R. § 404.1521 (impairment must be established by objective medical evidence from acceptable medical source; claimant's reports of symptoms or diagnosis are insufficient).  An ALJ is not required to "mechanically list and reject every possible limitation."  McCoy v. Astrue, 648 F.3d 605, 615 (8th Cir. 2011).  Moreover, "[a] hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."  Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001).  "A hypothetical is not insufficient because it does not include all the health limitations *alleged* by the claimant."  Kraus v. Saul,988 F.3d 1019, 1027 (8th Cir. 2021).  The ALJ heard Plaintiff's argument at the hearing that he would be off-task for more than 10% of the work day in order to use the restroom; but it is clear that the ALJ did not find this allegation supported by the record.  And, before this Court, Plaintiff has not offered any argument why this is reversable error.  Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting "out of hand" undeveloped and conclusory arguments).

For the reasons set forth above, the ALJ made reasonable conclusions about the opinion evidence in the record and other substantial evidence supports the ALJ's RFC finding.  While it is

unnecessary to repeat the findings above and the ALJ's findings, the ALJ did note that Plaintiff reported significant difficulty with functioning because of his heart condition, obesity, degenerative changes, and pain.  To account for these conditions and the symptoms they produce, the ALJ limited Plaintiff to sedentary work with additional functional and postural limitations. Certainly, the record could support a finding that Plaintiff was disabled; however, the record also contains substantial evidence to support a finding that Plaintiff is capable of completing an 8 hour, sedentary work day while being off-task 10% of the time with the significant postural and other limitations found by the ALJ.  See Bradford v. O'Malley, 104 F.4th 1055, 1060-1061 (8th Cir. 2024); Harwood v. Apfel, 186 F.3d 1039, 1042 (8th Cir. 1999).

\* \* \* \* \*

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 20th day of September, 2024

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE